## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>v.<br><br>Noe CECENA-CASTRO<br>Erik PORTILLO-VALDEZ<br>Marcos David NUNEZ-MARES<br>Sadiel Jose MARTINEZ-SOTO<br>Cesar MARTINEZ-MOLINA<br>Jose Luis CECENA-RODRIGUEZ<br>Jaime COTA-PERAZA<br>Brayan Armando REYNAGA-DOMINGUEZ<br>Luis Francisco LUNA-REYNAGA<br>Louis Enrique DOMINGUEZ-CHAPARRO<br>aka Jesus Antonio MARTINEZ-CHAVEZ;<br>AND<br>Guadalupe ACOSTA-ALVAREZ | CRIMINAL COMPLAINT<br><br>CASE NUMBER: MJ-25-04008-PCT-CDB |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date described in Attachment A in the County of Coconino in the District of Arizona, the defendant committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659 and 2, offense described as follows:

**See Attachment A, Description of Count**

I further state that I am a Special Agent for Homeland Security Investigations (HSI) and that this complaint is based on the following facts:

**See Attachment B, Statement of Probable Cause, Incorporated by Reference Herein.**

Continued on the attached sheet and made a part hereof:  ☒ Yes    ☐ No

///

**CC: USM & PTS**

| | |
|---|---|
| AUTHORIZED BY: Parker Stanley, AUSA | **BRYNNA M COOKE** <br> Digitally signed by BRYNNA M COOKE <br> Date: 2025.01.15 13:41:46 -07'00' |
| Brynna Cooke, SA for HSI <br> Name of Complainant | Signature of Complainant |
| Sworn to telephonically before me | |
| January 15, 2025 <br> Date | at Flagstaff, Arizona <br> City and State |
| HONORABLE CAMILLE D. BIBLES <br> United States Magistrate Judge <br> Name & Title of Judicial Officer | **Camille D. Bibles** <br> Digitally signed by Camille D. Bibles <br> Date: 2025.01.15 14:52:11 -07'00' <br> Signature of Judicial Officer |

# ATTACHMENT A
# DESCRIPTION OF COUNT
## COUNT 1
### Theft from Interstate Shipment

On January 13, 2025, in the District of Arizona, **Noe CECENA-CAASTRO, Erik PORTILLO-VALDEZ, Marcos David NUNEZ-MARES, Sadiel Jose MARTINEZ-SOTO, Cesar MARTINEZ-MOLINA, Jose Luis CECENA-RODRIGUEZ, Jaime COTA-PERAZA, Brayan Armando REYNAGA-DOMINGUEZ, Luis Francisco LUNA-REYNAGA, Louis Enrique DOMINGUEZ-CHAPARRO aka Jesus Antonio MARTINEZ-CHAVEZ;** and **Guadalupe ACOSTA-ALVAREZ** knowingly possessed goods and chattels, to wit: Nike Shoes, of a value in excess of $1000.00, which had been stolen from a BNSF train while moving in interstate commerce from California to Arizona, knowing the said goods and chattels to be stolen.

All in violation of Title 18, United State Code, Section 659 and 2.

## ATTACHMENT B

## STATEMENT OF PROBABLE CAUSE

I, Brynna Cooke, a Special Agent for Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with HSI and have been so employed since April 2024. Prior to my employment with HSI, I served as a United States Customs and Border Protection Officer for approximately four years. I am a law enforcement officer of the United States, and I am empowered by law to conduct criminal investigations, make arrests, and serve search and arrest warrants.

2. As a Special Agent with HSI, your Affiant investigates criminal violations of United States law, including import and export violations, controlled substances law violations, and money laundering violations. Your Affiant is familiar with investigations involving stolen vehicle organizations, theft rings, possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. As an HSI Special Agent, your Affiant has been trained in conducting narcotics and money laundering investigations and received specialized training concerning violations of the Controlled Substances Act contained within Title 21 of the United States Code. I am currently assigned to the HSI Flagstaff Office located in Flagstaff, Arizona, where we investigate transnational criminal organizations to include money laundering and drug trafficking organizations operating throughout the United States.

3. By virtue of my employment as a Special Agent, your Affiant has performed various tasks, which include, but are not limited to:

    a. functioning as a surveillance agent, thus observing and recording movements of persons involved in violations of United States Code as well as violations of Arizona State law;

      b.    functioning as a case agent, entailing the supervision of specific investigations involving various crimes throughout the United States; and

      c.    conducting complex investigations involving transnational criminal organizations committing various crimes throughout the United States.

4. I have consulted with other experienced investigators concerning the practices of transnational criminal organizations and the best methods of investigating them. In preparing this affidavit, I have conferred with other Special Agents and law enforcement officers. Furthermore, I have personal knowledge of the following facts or have learned them from the individual(s) mentioned herein.

5. Based on the below facts, your Affiant submits there is probable cause that **Noe CECENA-CAASTRO, Erik PORTILLO-VALDEZ, Marcos David NUNEZ-MARES, Sadiel Jose MARTINEZ-SOTO, Cesar MARTINEZ-MOLINA, Jose Luis CECENA-RODRIGUEZ, Jaime COTA-PERAZA, Brayan Armando REYNAGA-DOMINGUEZ, Luis Francisco LUNA-REYNAGA, Louis Enrique DOMINGUEZ-CHAPARRO aka Jesus Antonio MARTINEZ-CHAVEZ; and Guadalupe ACOSTA-ALVAREZ** committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659 and 2.

## BACKGROUND

6. Over the past fifteen years, several Transnational Criminal Theft Organizations have been burglarizing BNSF Railway and Union Pacific trains throughout the Southwest of the United States to include Arizona. These organizations consist primarily of Mexican citizens from the Mexican State of Sinaloa who operate out of Arizona and California, with extensive connections throughout California, Arizona, and New Mexico. The train burglaries have increased in frequency over the past two years.

7. The suspects usually scout high value containers on the BNSF railway on Eastbound trains that parallel Interstate 40 near Needles, California. Once the organization targets a particular train of interest, they typically find a location for several train burglars to get on the train. Once on the train, the burglars open container doors while the train is

moving and target merchandise to steal such as electronics, tools, and footwear. The burglars often target containers with visible high-security locks and use reciprocating saws, bolt-cutters, or similar tools to defeat the locking mechanisms. Once the burglars target a specific container that has desirable merchandise, the burglars on the train communicate with follow vehicles utilizing cellular devices, and those follow vehicles surveil the train until it stops or the burglars cause the train to stop to unload the freight. The suspects often cut the train braking system air hose, which causes the train to go into an emergency stop (commonly referred to as "UDE"), which is a sudden and dramatic application of all the brakes on the train. By cutting an air hose, the burglars can control when and where the train is stopped to unload the cargo they target to burglarize. This act is very dangerous and can cause a train to derail, which could ultimately cause serious injury or death to BNSF employees or citizens. The suspects have also sabotaged the train signal system by cutting the locks off signal boxes and then by cutting the control wires inside. This is also a dangerous act that creates dark areas on the rail network, requiring non-traditional train dispatching functions and extensive repairs. High-value trains travel at speeds up to 70 MPH on multiple tracks in both east and west directions. The train crews and train dispatchers rely on the signals for safe transportation.

8. Once the burglars unload the merchandise from the container that is on the train, the burglars often hide the product in fields or brush adjacent to the BNSF tracks to conceal it until it can be picked up later. The location of the stolen merchandise is then shared by the train burglars with the use of cellular devices to the surveillance crew who are following the train. The organization will then send box trucks to pick up the stolen merchandise if law enforcement is not detected. Often, the box trucks used by the organization were found to have been stolen with their Vehicle Identification Number (VIN) swapped. Once the stolen merchandise has been picked up, it is usually transported to California where it is sold or fenced to wholesale online retailers such as third-party Amazon and eBay resellers.

## CURRENT INVESTIGATION

9. Your Affiant learned the following information from BNSF Special Agent Derrick Porter:

   a. On January 13, 2025, BNSF train ZLACMEM812A reported a cut air hose at approximately 11:00 a.m. at mile post 384 in Perrin, Arizona, near Forest Service Road  113/124. Approximately eight miles from the stopped train location, a 2004 white Ford Econoline was observed with "Eddie's" written on the side, bearing Arizona temporary license plate number 1HA39Y (hereinafter referred to as Ford Econoline), registered to **Noe CECENA-CASTRO** out of Peoria, Arizona. Your Affiant knows that BNSF train ZLACMEM is dedicated entirely to the shipment of Nike products and is often targeted by burglary crews for this reason.

   b. While driving by, a BNSF Police Officer observed approximately 200-250 master cases of Nike shoes were observed next to BNSF railway milepost 384.

10. Your Affiant learned the following from Coconino County Sherriff's Office Deputy Peery:

    a. On January 13, 2025, at approximately 2:45 p.m., a blue Toyota Camry was observed near the location of the Ford Econoline traveling on Forest Service Road 124. Williams Police Department conducted a traffic stop of the vehicle and identified the occupants as **Jaime COTA-PERAZA** and **Sadiel Jose MARTINEZ-SOTO.**

       i. **Sadiel Jose MARTINEZ-SOTO** was previously a temporary plate holder for the Ford Econoline.

       ii. The Toyota Camry is registered to same address in Peoria, Arizona as the Ford Econoline.

    b.    At approximately 6:30 p.m., four trackers were placed in four separate Nike master cases containing Nike shoes style number HF4340-800. Your Affiant learned that Nike shoes style number HF4340-800 is an unreleased style that will be available to the public on March 14, 2025. The manufacturer's suggested retail price for HF4340-800 is $225 per pair.

    c.    At approximately 6:50 p.m., the Ford Econoline was observed driving north on Forest Service Road 124 towards the direction of the Nike shoes.

    d.    At approximately 7:10 p.m., a U-Haul box truck was observed driving north on Forest Service Road 124 at a high rate of speed.

    e.    At approximately 7:19 p.m., the Ford Econoline was observed traveling south on Forest Service Road 124.

    f.    At approximately 7:51 p.m., a U-Haul was observed at the location of the Nike master cases next to the BNSF railroad tracks. Several people were observed moving the Nike master cases from the BNSF railway to the U-Haul. The U-Haul then departed south on Forest Service Road 113 heading towards Forest Service Road 124.

    g.    Law enforcement confirmed that the boxes observed at the burglary site prior to any known activity were gone after the U-Haul left the site, except for approximately six boxes.

11.    Your Affiant learned the following from BNSF Special Agent Derrick Porter:

    a.    One of the trackers placed in the Nike boxes was logged traveling southbound on Forest Service Road 124, correlating to the location of the Ford Econoline. Two other trackers were logged traveling southbound on Forest Service Road 113 towards Forest Service Road 124, correlating to the location of the U-Haul.

      b.      The two trackers believed to be in the U-Haul traveling on Forest Service Road 113 stopped moving for approximately 30 minutes.

12.      Your Affiant along, with other law enforcement agencies, initiated surveillance of the Ford Econoline and below are the observations:

      a.      At approximately 7:30 p.m., a Ford Econoline with "Eddie's" written on the side drove south on Forest Service Road 124. The Ford Econoline got on Interstate-40 traveling westbound.

      b.      Agents maintained surveillance on the Ford Econoline until it was stopped by Arizona Department of Public Safety near mile marker 58 on I-40 near Kingman, Arizona.

      c.      Troopers contacted **Erik PORTILLO-VALDEZ** and **Noe CECENA-CASTRO** when they got out of the cab of the Ford Econoline. **PORTILLO-VALDEZ** fled the traffic stop on foot where he jumped over a five-strand barbwire fence and attempted to elude law enforcement. He hid in a tree structure where he attempted to cover himself with branches and lay down but was ultimately discovered by law enforcement. When apprehended, Agents observed that his hands were bloody and cut. A search incident to arrest of **PORTILLO-VALDEZ** revealed that he had in his possession a black iPhone in no protective case and a key that was later determined to open the lock at the rear of the Ford Econoline. **CECENA-CASTRO** was arrested without incident and had a phone in a black protective case with a silver bar on the back in his possession.

      d.      Agents conducted a safety inspection of the rear cargo compartment of the Ford Econoline. Upon opening the compartment, Agents observed approximately 150 master cases of Nike product labeled as style HF4340-800. Your Affiant learned that Nike style HF4340-800 is an unreleased

        Air Jordan 4 in Firewood Orange/Sail-Cinnabar. Your Affiant knows that each Nike master case contains six pairs of Nike shoes within a master case. Based on the estimated amount of Nike Master cases within the panel van it is estimated there is approximately $202,500 worth of stolen Nike shoes within the Ford Econoline.

13. Your Affiant learned the following from HSI Special Agent Starnes:

    a. Agents observed the U-Haul depart southbound on Forest Service Road 113 from the burglary site and not cross the law enforcement cameras in the region which were less than six miles apart. The trackers in the product then became stationary. Arizona Department of Public Safety Troopers, via air support, confirmed that there was a U-Haul stationary where the product trackers stopped.

    b. At approximately 8:43 p.m., cameras captured a large SUV traveling northbound on Forest Service Road 113. Coconino County Sherriff's Deputies were stationed north of the location where the U-Haul became stationary. Deputies did not observe any vehicle drive north of their location indicating that the vehicle had stopped somewhere between the cameras to the south and the Deputies location which was approximately 2.5 miles north.

    c. At approximately 9:18 p.m., a large SUV was captured again by cameras traveling southbound on Forest Service Road 113 heading towards Forest Service Road 124.

    d. At approximately 9:36 p.m., Coconino County Sherriff's Deputies conducted a traffic stop on a Chevrolet Tahoe at Cataract Lake Road and County Club Road in Williams, Arizona.

        i. The driver was detained and identified as **Marcos David NUNEZ-MARES.** In **NUNEZ-MARES**' possession were two phones (a light-

      colored iPhone with a cracked back screen in a black protective case and silver T-Mobile phone with four cameras on the back in no protective case), and a key to a U-Haul rental with "DC1642C" marked on it which matches the markings "DC1642C" that are physically on the U-Haul.

ii. The remaining passengers of the Chevy Tahoe were detained and identified:

1. **Sadiel Jose MARTINEZ-SOTO,** who was in possession of a green iPhone in a dark colored protective case with a lightning bolt on it.

2. **Cesar MARTINEZ-MOLINA**, who was in possession of a phone in a dark green protective case with a cracked screen protector.

3. **Jose Luis CECENA-RODRIGUEZ,** who was in possession of a phone in a blue protective case with a silver bar on the back.

4. **Jaime COTA-PERAZA**, who was in possession of a purple Motorola Razr phone.

5. **Brayan Armando REYNAGA-DOMINGUEZ**. During the interview with **REYNAGA-DOMINGUEZ,** he described his phone which matched a phone observed by a Flagstaff Police Department Detective on the dashboard on the front passenger side of the Tahoe.

6. **Luis Francisco LUNA-REYNAGA**. During the interview with **LUNA-REYNAGA,** he stated that is phone was left in the Tahoe.

       7. **Guadalupe ALVAREZ-ACOSTA**, who was in possession of a gray phone in a black protective case with a cracked screen protector on the front.

       8. **Louis Enrique DOMINGUEZ-CHAPARRO aka Jesus Antonio MARTINEZ-CHAVEZ** was in possession of a dark Samsung phone with a black protective case.

   iii. A registration check of the Tahoe shows that it is a 2003 Chevrolet Tahoe with Arizona plate 4TA83T and Vehicle Identification Number (VIN) 1GNEC13VX3J116693. The registered owner was identified as Wendy Paola Vazquez-Ruiz in Phoenix, Arizona.

  e. At approximately 10:00 p.m., law enforcement observed that the U-Haul was stationary in the same location. Law Enforcement then approached the U-Haul and observed that it was unoccupied. Conducting a safety sweep of the U-Haul's rear cargo compartment, Agents saw it was completely loaded with Nike master cases that matched the style number that was observed next to the rail tracks.

   i. Agents saw multiple handprints and fingerprints on the front bumper. In the immediate area there were fresh tire tracks that did not match the U-Haul as well as food and water discarded next to the U-Haul. Water bottles that were observed inside the U-Haul cab were of the same brand as water bottles that were observed by Agents in the Tahoe and discarded next to the U-Haul. Agents saw several different footprints surrounding the U-Haul.

   ii. Agents observed an oily substance trail from the burglary site to where the U-Haul was hidden off the forest road.

14. Your Affiant learned the following from HSI Special Agent Chris Foster:

  a. SA Foster inspected the undercarriage of the U-Haul and observed signs that the U-Haul had been driven over rocky terrain, damage to the

        transmission pan, and a leak in the oil pan where it appeared the oil pan had been struck.

    b.    SA Foster observed a quart of oil in plain view in the cab of the U-Haul. Additionally, he observed the rental agreement for the U-Haul. The U-Haul was rented by **Marcos NUNEZ-MARES** in Williams, Arizona on January 13, 2025, at approximately 3:08 p.m. The vehicle was due to be returned to U-Haul on January 16, 2025 in Cudahy, California.

15.    HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Noe CECENA-CASTRO** his Miranda Rights in Spanish which was recorded. **CECENA-CASTRO** signed a Statement of Rights acknowledging his rights and stated he was willing to be interviewed. Agents learned the following information from **CECENA-CASTRO:**

    a.    **CECENA-CASTRO** lives in Phoenix, Arizona and is the registered owner of the Ford Econoline.

    b.    Sergent Leyva showed **CECENA-CASTRO** a picture of the Ford Econoline with "Eddie's" printed on the side which **CECENA-CASTRO** stated belonged to him.

    c.    **CECENA-CASTRO** stated that **Erik PORTILLO-VALDEZ,** whom he knows by the nickname "Churea", met **CECENA-CASTRO** in Phoenix and the two drove to the woods together. **CECENA-CASTRO** said they arrived on Sunday (January 12, 2025). **PORTILLO-VALDEZ** and **CECENA-CASTRO** loaded boxes into the Ford Econoline. **CECENA-CASTRO** said was going to get paid an unknown amount.

16.    HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Erik PORTILLO-VALDEZ** his Miranda Rights in Spanish, which was recorded. **PORTILLO-VALDEZ** signed a Statement of Rights acknowledging his rights and stated

he was willing to be interviewed. Agents learned the following information from **PORTILLO-VALDEZ**:

    a.    Approximately 15-18 days ago, **PORTILLO-VALDEZ** delivered product to Los Angeles, California. He was paid $25,000 which he divided between himself and four other individuals.

    b.    **PORTILLO-VALDEZ** drove from Victorville, California by himself and arrived in Williams, Arizona on Sunday (January 12, 2025). On the same day, several individuals drove north from Phoenix in a Toyota Camry to meet **PORTILLO-VALDEZ**.

    c.    On Sunday, **PORTILLO-VALDEZ** slept in the woods in the Ford Econoline. **PORTILLO-Valdez** described the location of the Pipeline Road as the location where he parked the Ford Econoline and stayed overnight.

    d.    An individual by the name "Cesar" coordinated the current operation which was supposed to include **PORTILLO-VALDEZ** taking the product to Los Angeles, California again. "Cesar" said to go to the area with the boxes and provided directions to the location. It took approximately 15-20 minutes to load the boxes into the Ford Econoline with six people.

17.    HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Marcos David NUNEZ-MARES** his Miranda Rights in Spanish which was recorded. **NUNEZ-MARES** signed a Statement of Rights acknowledging his rights and stated he was willing to be interviewed.

18.    HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Sadiel Jose MARTINEZ-SOTO** his Miranda Rights in Spanish which was recorded. **MARTINEZ-SOTO** declined to sign a Statement of Rights acknowledging his rights and stated he was not willing to be interviewed. Agents stopped the interview.

19. HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Cesar MARTINEZ-MOLINA** his Miranda Rights in Spanish which was recorded. **MARTINEZ-MOLINA** signed a Statement of Rights acknowledging his rights and stated he was willing to be interviewed. Agents learned the following information from **MARTINEZ-MOLINA**:

    a. **MARTINEZ-MOLINA** stated that he and eight other individuals were camping in the woods in Williams, Arizona. They had blankets and food. They arrived from his house in Phoenix on Sunday, January 12, 2025, at approximately 7:00 p.m. He knows the other individuals from the Phoenix area and from work.

    b. The Tahoe belongs to one of the individuals named "Kiki".

20. HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Jose Luis CECENA-RODRIGUEZ** his Miranda Rights in Spanish which was recorded. **CECENA-RODRIGUEZ** declined to sign a Statement of Rights acknowledging his rights and stated he was not willing to be interviewed. Agents stopped the interview.

21. HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Jaime COTA-PEREZA** his Miranda Rights in Spanish which was recorded. **COTA-PEREZA** signed a Statement of Rights acknowledging his rights and stated he was willing to be interviewed. Agents learned the following information from **COTA-PEREZA**:

    a. **COTA-PEREZA** was camping in Williams, Arizona with a person nicknamed "Sotago" that **COTA-PEREZA** has known from work for approximately two months. They had blankets for their camping gear and to sleep in the car. **COTA-PEREZA** and "Sotago" were in a Toyota Camry that belongs to **COTA-PEREZA**.

    b. **COTA-PEREZA** and "Sotago" met with the other individuals whom **COTA-PEREZA** knows through work and friends at the Love's [gas station].

22.     HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Brayan Armando REYNAGA-DOMINGUEZ** his Miranda Rights in Spanish which was recorded. **REYNAGA- REYNAGA-DOMINGUEZ** declined to sign a Statement of Rights acknowledging his rights and stated he was not willing to be interviewed. Agents stopped the interview.

23.     HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Luis Francisco LUNA-REYNAGA** his Miranda Rights in Spanish which was recorded. **LUNA-REYNAGA** signed a Statement of Rights acknowledging his rights and stated he was willing to be interviewed. Agents learned the following information from **LUNA-REYNAGA**:

   a.   **LUNA-REYNAGA** and other individuals were camping and hanging around Williams, Arizona. The four individuals in the Tahoe were **REYNAGA-DOMINGUEZ**, **NUNEZ-MARES**, "Enrique", and himself. **NUNEZ-MARES** was driving the Tahoe. They were near Williams for approximately four days. They stayed at a Motel 6 for a night to see the snow.

   b.   **NUNEZ-MARES** drove the U-Haul.

   c.   **LUNA-REYNAGA** was told were going to load up a bus and that **LUNA-REYNAGA** was going to be paid for assisting. They loaded boxes of shoes that were orange in color. He said that everyone that was arrested helped load boxes. The Tahoe dropped them off near the boxes and **NUNEZ-MARES** went to rent the U-Haul. The destination for the shoes was Los Angeles, California.

   d.   **LUNA-REYNAGA** assisted in loading shoes into a white box truck and saw the white box truck leave with two occupants.

   e.   **LUNA-REYNAGA** saw the individual who goes by "Indio" in the Camry in Williams. "Indio" drove and loaded boxes.

      f.      The individual in the black puffy jacket is **LUNA-REYNAGA's** cousin "Jose" and was part of the loading crew.

      g.      **Cesar MARTINEZ-MOLINA** loaded boxes.

      h.      **Cesar MARTINEZ-MOLINA**'s cousin, **Jose MARTINEZ-SOTO** loaded boxes.

      i.      **David NUNEZ-MARES** drove the U-Haul.

      j.      Enrique, **Brayan REYNAGA-DOMINGUEZ**'s uncle, loaded boxes.

24.    HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Guadalupe ALVAREZ-ACOSTA** his Miranda Rights in Spanish which was recorded. **ALVAREZ-ACOSTA** signed a Statement of Rights acknowledging his rights and stated he was willing to be interviewed. Agents learned the following information from **ALVAREZ-ACOSTA**:

      A female in Phoenix let **ALVAREZ-ACOSTA** drive the Tahoe up to Williams by himself. **ALVAREZ-ACOSTA** met other individuals who got into the Tahoe with him. From there, they went to a location in Williams near where they were detained. **ALVAREZ-ACOSTA** drove and dropped off engine oil to another individual. **ALVAREZ-ACOSTA** then turned around after dropping off the oil. There were nine individuals in the Tahoe and **ALVAREZ-ACOSTA** jumped into the back seat when they were detained and made himself small.

25.    HSI Special Agent Starnes and Flagstaff Police Department Sergeant Leyva read **Louis Enrique DOMINGUEZ-CHAPARRO aka Jesus Antonio MARTINEZ-CHAVEZ** his Miranda Rights in Spanish which was recorded. **DOMINGUEZ-CHAPARRO** declined to sign a Statement of Rights acknowledging his rights and stated he was not willing to be interviewed. Agents stopped the interview.

26. Your Affiant learned from Special Agent Derrick Porter that the Nike shoes were stolen from container MSNU8542667 which was a container aboard BNSF train ZLACMEM812A.

27. Your Affiant conducted Department of Homeland Security import research related to container MSNU8542667 and learned the following:

    a. On December 12, 2024, container MSNU8542667 was shipped on Motor Vessel MSC MEDITTERRANEAN voyage 442N that traveled from Xiamen, China, and arrived at the Los Angeles, California, Seaport on December 31, 2024.

    b. After its arrival, container MSNU8542667 was transferred to BNSF for transportation along the Transcon.

### *Noe CECENA-CASTRO*

Law enforcement checks show CECENA-CASTRO is a United States Citizen.

### *Erik PORTILLO-VALDEZ*

Law enforcement checks show PORTILLO-VALDEZ is a Mexican citizen from Sinaloa, Mexico and is present in the United States illegally. PORTILLO-VALDEZ was removed from the United States twice.

### *Marcos David NUNEZ-MARES*

Law enforcement checks show NUNEZ-MARES is a Mexican citizen and has been in asylum proceedings since May 2024.

### *Sadiel Jose MARTINEZ-SOTO*

Law enforcement checks show MARTINEZ-SOTO is a Mexican citizen from Sinaloa, Mexico and is present in the United States illegally.

### *Cesar MARTINEZ-MOLINA*

Law enforcement checks show MARTINEZ-MOLINA is a Mexican citizen from Sinaloa, Mexico and is present in the United States illegally.

*Jose Luis CECENA-RODRIGUEZ*

Law enforcement checks show CECENA-RODRIGUEZ is a Mexican citizen from Sinaloa, Mexico and is present in the United States illegally. CECENA-RODRIGUEZ was voluntarily removed from the United States once.

*Jaime COTA-PERAZA*

Law enforcement checks show COTA-Peraza is a Mexican citizen from Sinaloa, Mexico and is present in the United States illegally. COTA-PERAZA was voluntarily removed from the United States twice and expedited removed twice.

*Brayan Armando REYNAGA-DOMINGUEZ*

Law enforcement checks show REYNAGA-DOMINGUEZ is a Mexican citizen from Sinaloa, Mexico and is present in the United States illegally. REYNAGA-DOMINGUEZ was refused a visa to the United States in 2014.

*Luis Francisco LUNA-REYNAGA*

Law enforcement checks show LUNA-REYNAGA is a Mexican citizen from Sinaloa, Mexico and is present in the United States illegally.

*Louis Enrique DOMINGUEZ-CHAPARRO aka Jesus Antonio MARTINEZ-CHAVEZ*

Law enforcement checks show MARTINEZ-CHAVEZ is the possible alias of Luis Enrique DOMINGUEZ-CHAPARRO. DOMINGUEZ-CHAPARRO is a Mexican citizen and is present in the United States illegally. He was voluntarily removed from the United States twice and expedited removed twice.

*Guadalupe ACOSTA-ALVAREZ*

Law enforcement checks show Guadalupe ACOSTA-ALVAREZ is a Mexican citizen and is present in the United States illegally.

## CONCLUSION

28. For these reasons, your Affiant submits that there is probable cause to believe that **Noe CECENA-CAASTRO, Erik PORTILLO-VALDEZ, Marcos David NUNEZ-MARES, Sadiel Jose MARTINEZ-SOTO, Cesar MARTINEZ-MOLINA, Jose Luis**

CECENA-RODRIGUEZ, Jaime COTA-PERAZA, Brayan Armando REYNAGA-DOMINGUEZ, Luis Francisco LUNA-REYNAGA, Louis Enrique DOMINGUEZ-CHAPARRO aka Jesus Antonio MARTINEZ-CHAVEZ; and Guadalupe ACOSTA-ALVAREZ** committed the crime of Possession or Receipt of Goods Stolen from Interstate Shipment, in violation of Title 18, United States Code (U.S.C.) § 659 and 2.

29. I declare under penalty of perjury under the laws of the Unites States of America that the forgoing is true and correct.

**BRYNNA M COOKE**
Digitally signed by BRYNNA M COOKE
Date: 2025.01.15 13:42:22 -07'00'

Brynna Cooke
Special Agent
Homeland Security Investigations

Sworn to and subscribed electronically this ___15___ day of January 2025.

**Camille D. Bibles**
Digitally signed by Camille D. Bibles
Date: 2025.01.15 14:51:23 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge